The Law Office Of John F. Olsen, LLC
John F. Olsen
105 Grove Street, Suite 105
Montclair, New Jersey 07043
t. (973)932-0474

*Attorneys for Plaintiffs Reliable Trucking Group, Inc.
and John Walter*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RELIABLE TRUCKING GROUP, INC. AND JOHN WALTER,<br><br>Plaintiffs,<br><br>-vs-<br><br>SYLVAIN "FRANK" CHOUEN, GREGORY MEJIA, THE ROUTE STORE, and ACZA TRUCKING, LLC,<br><br>Defendants. | Civil Action No. 2:24-CV-8619<br><br>**COMPLAINT** |

Plaintiffs Reliable Trucking Group, Inc. and John Walter, for their complaint against defendants Sylvain "Frank" Chouen, Gregory Mejia, The Route Store and ACZA Trucking, LLC, allege as follows:

**JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). This Court has supplemental jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a) because they are related to plaintiffs Exchange Act claim and they form part of the case or controversy. This Court has also jurisdiction under 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper in this District under 28 U.S.C. § 1391(a)(2) as a substantial part of

1

the events giving rise to these claims occurred in this District.

## PARTIES

3. Plaintiff Reliable Trucking Group, Inc. is a New Jersey corporation with its principal place of business in Elizabeth, New Jersey.

4. Plaintiff John Walter is an individual residing in Elizabeth, New Jersey. He is also the owner and chief executive officer of Reliable Trucking and formed the company to invest in trucking routes.

5. On information and belief, defendant Chouen is an individual residing in West Islip, New York. Chouen owns and operates defendant The Route Store which, upon information and belief, is a New York corporation operating out of Chouen's home in West Islip

6. On information and belief, Defendant Mejia is a resident of Las Vegas, Nevada. Mejia owns and operates defendant ACZA which upon information and belief, is a Nevada limited liability company with a principal place of business in Las Vegas, Nevada.

7. Defendant The Route Store, among other things, acts as a business broker focusing on the marketing and sale of long-haul and local trucking routes, franchised trucking routes and other businesses.

8. Defendant ACZA is a Nevada limited liability company engaged in the trucking business. ACZA is located at 4365 N. Las Vegas Blvd, Las Vegas, Nevada 89115. Its Carrier Registration is U.S. DOT Number is 3300503.

## FACTUAL ALLEGATIONS

9. In November 2023, Walter and his company, Reliable Trucking Group, entered into an agreement to purchase an interest in a joint venture (the "JV Interest"). A copy of the agreement is attached hereto as Exhibit A.

10. In order to obtain the JV Interest, plaintiffs paid $229,000, with a $163,000 down payment and ACZA financing the balance.

11. The JV Interest purported to entitle plaintiffs to receive:

   a. Titles to a Freightliner sleeper truck and a trailer capable of hauling 8 cars, which were to be leased back to ACZA, under a written lease with lease payments at market rates to be made to plaintiffs; and

   b. Weekly accounting reports and profits from the trucking routes operated by Mr. Mejia with a guaranteed minimum net profit of $1800 per week, for 48 weeks per year for at least the first three years of the 5-year contract term. *Id*. ¶¶ 2, 3, 7.

12. When he forwarded plaintiffs the agreement, defendant Mejia also sent plaintiffs copies of "earnings statements" for October and November 2023. These statements all showed profits of roughly $1800 per week. Upon information and belief, these income statements were fabricated and not based on actual revenue and cost figures.

13. Plaintiffs have not received titles to any trucks or trailers.

14. Plaintiffs have not received the required weekly accounting reports, or the guaranteed weekly income.

15. Since inception, plaintiffs have received only 11 account statements and payments.

16. Plaintiffs have not received any lease payments for the use of the equipment they purportedly purchased.

17. Defendants Chouen and The Route Store acted with defendants Mejia and ACZA to solicit investors to purchase the JV Interest.

18. Defendants Chouen and The Route Store solicited plaintiffs Walter and Reliable Trucking to purchase the JV Interest through a written solicitation delivered to plaintiff Walter

by email on November 10, 2023 and other communications. The key terms of the November 10, 2023 solicitation are:

> Business Description: Well Established, contract, protected and 100% Absentee trucking opportunity with a 2020 Freight liner sleeper truck worth $80k and a auto trailer worth over $40k and a 3 year Guaranteed net income of $93k to $102k yearly. Management handles all aspects. Unlike Fedex that has background, drug testing and 1 year contracts. This has a renewable 5 year contract, true unlimited growth potential and FINANCING! The best part, Everything is in writing "Don't Blink".
>
> I have attached a recording of the explanation of how this operates.
>
> You will be getting 2020 Freightliner Cascadia sleeper trucks, that the bank has appraised at $135K-$140K, you will own the trucks with a title along with Auto trailer ($40K. The trucks will be run under the authority of the companies DOT & MC numbers.
>
> Each run is $229K, with a minimum net of $1800-$2000 a week net, It's coming out to 39% ROI, as a totally passive income.
>
> You can do any amount of trucks you desire, the company is selling their existing runs, not start-ups
>
> They have geared up with their own repair shop with six mechanics, seven dispatchers, three managers, and an entire back office.
>
> They have two tow rigs, extra trucks and extra drivers. They have been in business for ten years and have been doing this model for a year now. So essentially, you are 50/50 partners with them, they take care of every facet of the business, they have an abundance of suppliers that they service. FedEx averages $1.95- $2.05 a mile gross, and an average of $5 a gallon for diesel fuel, this company is averaging $7+ per mile and they are obtaining diesel fuel at $4 per gallon. They are paying their drivers well and on a 1099, so you are saving workmens' comp and payroll tax, that can be 25-27% per week savings. Every week you get your settlements on Thursday night and ACH into your account on Friday. They have 50+ trucks and want to grow to 100+.
>
> Our procedure is, a simple FOP (Formal offer to purchase) to do your due diligence, we take a deposit, that goes into an escrow only account, and can only move, with you signing our release. The deposit comes off the purchase price and is included from the

> total down payment. Seller will sign, and then we will do a meet and greet conference call with him and one of the managers. After that you will see the contract and invoices from the runs you would be purchasing. Typically the trucks go out for two to three weeks and they do anywhere from $8500- $10,500 a week gross, on the invoice you will see the destination, miles and a breakdown of all expenses.
>
> Once you are ready to close you can make an appointment to visit and close at their facility. We also have references of existing clients for you to call.
>
> You can see, they have taken every precaution to do things in the right fashion.
>
> This is the best opportunity I have, and if you decide not to move forward, your deposit is 100% refundable within two days from receipt of the release we would send you.
>
> I hope you consider this extremely rare opportunity, you will appreciate it.

19. The written solicitation was, in all material respects, false and a total fabrication by defendants Chouen and The Route Store.

20. There was no guaranteed income of $93,000 to $102,000 yearly.

21. There was no Freightliner Cascadia sleeper truck with a bank appraisal of $135,000 to $140,000.

22. There was no auto carrier worth $40,000.

23. ACZA did not have two tow rigs, extra trucks and extra drivers.

24. ACZA did not have 50 plus trucks, it had 5 trucks.

25. ACZA was not in business for 10 years, it was formed in 2019.

26. ACZA did not have its own repair shop, six mechanics, seven dispatchers, three managers and an entire back office.

27. While he was communicating with defendant The Route Store, plaintiff had numerous telephone conferences with defendant Chouen. During those conversations, defendant

5

Chouen made the following misrepresentations to plaintiff:

- He had sold this particular ACZA route to many clients in the past; and
- He received no complaints from his clients that purchased the ACZA Route.

28. When he was speaking to defendant Chouen, plaintiff expressed an interest in one or two other routes that defendant Chouen had listed for sale through defendant The Route Store. Plaintiff explained to defendant Chouen that, because he worked full time, he needed to purchase a route that generated passive income. Defendant Chouen told plaintiff that the other routes he was interested in were not suitable for him because, unlike the ACZA Route, they were not passive investments.

29. To date, in reliance on the written and oral representations made by the defendants, plaintiffs have paid defendants a total of $166,014.18:

- November 13, 2023: $22,500 payment to defendants Chouen and The Route Store
- December 6, 2023: $124,000 to ACZA for route, sleeper truck, and trailer
- December 6, 2023: $15,500 down payment to ACZA
- March 18, 2024: $1362.06
- April 19, 2024: $1326.06 loan payment to ACZA
- May 22, 2024: $1326.06 loan payment to ACZA

30. Neither plaintiff Walter nor plaintiff Reliable Trucking has received title to any trucks or trailers, despite defendant Mejia's repeated assurances that the titles were being delivered.

31. Defendants have not provided the required weekly accounting reports or paid the guaranteed weekly income.

32. Since inception, plaintiffs have received only 18 weekly account statements—rather than the 35 he was promised.

33. Since inception, plaintiffs have received only $33,495.61 in payments from ACZA, rather than the $63,000 to $70,000 that was guaranteed. The last payment ACZA made was on June 10, 2024.

34. Rather than receive the required account statements and payments, plaintiffs regularly receive convoluted excuses like the following, excerpted from a May 30, 2024 email from ACZA to Walter:

> We regret to inform you that we must urgently address a matter of utmost importance. We kindly request your understanding as we proceed to process the payroll for the current week on June 5th. It has come to our attention that the customer responsible for the load payments has unfortunately encountered a delay in their payment. In light of this situation, we have taken the necessary steps to ensure that the fuel expenses, driver compensation, and truck maintenance will be duly covered for the upcoming two weeks. We sincerely apologize for any inconvenience this may cause and appreciate your patience and cooperation.

35. Plaintiffs have never received any lease payments for the use of the equipment they purportedly purchased.

36. As a result, plaintiffs have suffered and continue to suffer ongoing economic loss.

37. Defendants Chouen and The Route Store continue to list the ACZA route on their website to solicit potential JV Interest investors.

## FIRST CLAIM FOR RELIEF
**(Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5)**

38. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37 as if set forth fully herein.

39. The JV Interest agreement is a security under the law in that it required an investment of money by plaintiffs, into a common enterprise and any profits were to be derived

solely from the efforts of others.

40. Defendants worked together to solicit investors to purchase the JV Interest.

41. The JV Interest agreement contained material misstatements of fact relating to the nature of the rights that were to be conferred, the property that was to be transferred and the amount of income that would be derived from ACZA's efforts and distributed to holders of JV Interests, including plaintiffs.

42. The written solicitations from the defendants concerning ACZA contained material misrepresentations concerning the nature and size of ACZA's operations, ACZA's facilities, the property that was to be transferred to plaintiffs from ACZA, and the revenue and profits that would be derived from the JV Interest.

43. Defendant Chouen's oral representations to plaintiff misrepresented key facts, including the number of JV Interests that defendants had sold.

44. When they drafted and presented the solicitation to plaintiffs and made the oral representations to plaintiff, defendants Chouen and The Route Store knew, or should have known, that the information contained therein was false in all material respects. ACZA and its operations were simply nothing like the company described in the solicitation or oral communications.

45. When they drafted and presented the paperwork for the purchase of the JV Interest to plaintiffs and the "Earning Statements," defendants Mejia and ACZA knew, or should have known, that the information contained therein was false in all material respects. There would be no equipment purchased and delivered to plaintiffs. There would be no lease back of the equipment and related lease payments and there would be no ability to pay a guaranteed income of at least $1800 per week for 3 years.

46. Defendants made the written and oral misrepresentations to plaintiffs to induce them to purchase a JV Interest from defendants.

47. Plaintiffs reasonably relied on the representations defendants made in the solicitation emails, communications and in the Joint Venture Agreement and the oral representations made by defendant Chouen and made an investment of more than $166,000 in ACZA to obtain a JV Interest.

48. If the solicitations and oral communications from defendants did not contain the numerous material representations cited above, plaintiffs would have never signed The Route Store's Non-Disclosure Agreement or entered into the Joint Venture Agreement.

49. By making material misrepresentations while selling a security, defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, I7 C.F.R. § 240.10b-5(b).

50. As a direct result of plaintiffs' reliance on defendants' misrepresentations, plaintiffs were injured in an amount to be proved at trial but exceeding $166,000.00.

## SECOND CLAIM FOR RELIEF
### (Common Law Fraud)

51. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

52. Defendants made material factual misrepresentations to plaintiffs concerning the operations, stability, revenue and profits generated by defendant ACZA and the benefits to be derived as a holder of a JV Interest.

53. When defendants made these misrepresentations they knew, or should have known, that they were false.

54. When they made their representations, defendants knew, or should have known, that

9

the JV Interest was not legitimate and not worth the amount of money they asked plaintiffs to pay.

55. Defendants made these misrepresentations intending to induce plaintiffs to rely on the misrepresentations and pay a significant sum for the JV Interest.

56. When they made their misrepresentations, defendants knew plaintiffs would suffer great financial harm if they purchased the JV Interests defendants were selling.

57. Plaintiffs reasonably relied on defendants' misrepresentations and invested more than $166,000 to obtain a JV Interest.

58. As a direct result of plaintiffs' reliance on defendants' fraudulent misrepresentations, plaintiffs have been damaged in an amount to be proven at trial, but in excess of $166,000.00.

### THIRD CLAIM FOR RELIEF
(Negligent Misrepresentation)

59. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 58 as if set forth fully herein.

60. Defendants made material factual misrepresentations to plaintiffs concerning the operations, stability, revenue and profits generated by defendant ACZA and the benefits to be derived as a holder of a JV Interest.

61. When defendants made these misrepresentations, they were negligent in not knowing that the statements were false and misleading, and the JV Interest was not legitimate and not worth the amount of money they asked plaintiffs to pay.

62. When they made these misrepresentations, defendants intended plaintiffs to rely on the misrepresentations and pay a significant sum for the JV Interest.

63. Plaintiffs reasonably relied on defendants' misrepresentations and paid more than

$166,000.00 to purchase the JV Interest offered by defendants.

64. As a direct result of plaintiffs' reliance on defendants' fraudulent misrepresentations, plaintiffs have been damaged in an amount to be proven at trial, but in excess of $166,000.00.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract against ACZA and Mejia)**

65. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 64 as if set forth fully herein.

66. On or about November 27, 2023, plaintiff Reliable Trucking entered into a Joint Venture Agreement with ACZA Trucking.

67. Under the terms of the agreement, in exchange for a payment of $229,00.00, plaintiff was to receive:

- Title to a Freightliner sleeper truck and trailer capable of hauling 8 cars, which was to be leased back to ACZA, under a written lease with lease payments to plaintiffs;
- Profits from the trucking routes operated by defendants ACZA and Mejia with a guaranteed minimum net profit of $1800 per week, for 48 weeks per year for at least the first three years of the 5-year contract term; and
- Weekly account statements and profit checks.

68. Plaintiffs fully complied with their obligations under the agreement and have paid in excess of $166,000 to defendants and obtained financing from the defendants for the remaining balance.

69. Defendants breached their obligations under the agreement:

11

- Plaintiff Reliable Trucking never received the title to a Freightliner sleeper truck and trailer capable of hauling 8 cars although defendant Mejia repeatedly told plaintiff Walter that the titles were being sent;
- Plaintiff Reliable Trucking has not received any lease payments from defendants; and
- Plaintiff has not received guaranteed income of $1800 per week.

70. As a result of defendants' breach of the contract, plaintiffs have been damaged in an amount to be proved at trial, but in excess of $166,000.00.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants:

a). On all Claims for Relief, for an award of compensatory damages in an amount to be proven at trial, but in excess of $166,000, plus interest thereon;

b). On their First through Third Claims for Relief, for an award of statutory penalties and punitive damages; and

c). An award of attorney's fees, costs of suit, interest and such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: August 21, 2024

The Law Office of John F. Olsen, LLC
105 Grove Street, Suite 6
Montclair, New Jersey 07042
(973) 667-7770

By: /s/ *John F. Olsen*
    John F. Olsen, Esq.

*Attorneys for Plaintiffs Reliable Trucking Group, Inc. and John Walter*